**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

PATRICK T. MULVANY,                          No. CIV S-10-0745-CMK

        Plaintiff,

    vs.                                      MEMORANDUM OPINION AND ORDER

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 18) and defendant's cross-motion for summary judgment (Doc. 19).

/ / /

/ / /

/ / /

1

## I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on July 26, 2007.  In the application, plaintiff claims that disability began on January 1, 2007.  Plaintiff claims that disability is caused by a combination of "osteoarthritis, degenerative joint disease/arthritis, severe pes planus, flat feet, and obesity" which give rise to "debilitating symptoms including chronic pain, sit/stand/walk limitations, impaired sleep, the need to lie down and rest during the day, the need to frequently change position, and impaired concentration, persistence, and pace."  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on February 29, 2009, before Administrative Law Judge ("ALJ") Michael J. Seng.   In an August 20, 2009, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant suffers from osteoarthritis, a severe impairment;

2. The claimant's severe impairment does not meet or medically equal any impairment listed in the regulations;

3. The claimant has the residual functional capacity to perform the full range of light work; and

4. Based on plaintiff's age, education, work experience, and residual functional capacity, the Medical-Vocational Guidelines direct a conclusion of "not disabled."

After the Appeals Council declined review on January 26, 2010, this appeal followed.

## II.  SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following evidence, summarized chronologically below:

June 13, 2006 – Dr. Garrett noted that plaintiff complained of pinching in his back when raising from a flexed position.  Objectively, plaintiff's low back revealed no tenderness, though painful range of motion was noted.  Straight leg raising was negative.  Plaintiff's weight was 235 pounds.

February 20, 2007 – Plaintiff reported to Dr. Garrett with complaints of continuing knee, shoulder, wrist, foot, and back pain.  On objective examination, plaintiff was not in any acute distress.  There was a full range of motion in the shoulders and knees.  Pain was noted in the lumbar spine, though straight leg raising was negative.  Motor strength and sensation were normal, and plaintiff was able to heel-to-toe walk.  Plaintiff's weight was 233 pounds.

February 24, 2007 – Dr. Garrett's treatment notes indicate that plaintiff reported with rib pain secondary to a fall from a ladder the preceding month.  No abnormal findings were noted on objective examination.  Plaintiff's weight at the time was 231 pounds.

April 12, 2007 – Treatment notes provided by Dr. Garrett reflect that plaintiff presented with complaints of joint pain in his shoulders, elbows, and knees bilaterally.  On physical examination, Dr. Garrett reported: "the shoulders show a full range of motion.  There is no effusion.  The joints are free from swelling, warmth, or redness."  As to the knees, Dr. Garrett noted: "The knees are normal and have a full range of motion.  There is no effusion, redness, or tenderness.  The patella is normal.  There is no joint instability or joint line tenderness."  Regarding plaintiff's elbows, Dr. Garrett observed: "The elbows show a full range of motion.  There is no effusion.  The joints are free from swelling, warmth, or redness."  Dr. Garrett diagnosed unspecified joint pain.  Plaintiff's weight at the time was 234 pounds.

August 28, 2007 – Plaintiff submitted a Function Report.  He stated that he lives in a house alone.  For a typical day, plaintiff described: "I get up take shower and get dressed then I have my coffee, breakfast then I watch the news and read the paper.  Then sometimes I will go outside and water the plants & lawn wash down driveway then have some dinner and read & watch some TV.  Then get ready for bed."  He stated that he needs help with his shoes and, sometimes, washing his back.  Plaintiff stated that he usually cooks once or twice a week and complains that he "can't BBQ like I use to."  He stated that he irons his clothes every day and also does dishes.  He stated that he drives a car and can do so alone.  He shops "every other week 2 to 3 hours."  Plaintiff stated that he is able to handle all money related matters.  For physical

limitations, plaintiff listed difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, concentrating, and using his hands.  He stated that he can finish what he starts, can follow written and spoken instructions, and can get along with authority figures.  He also stated that he can handle stress and changes in routine.

On this same date, plaintiff's girlfriend – Silvia Rios – submitted a third-party Function Report.  Ms. Rios reported that plaintiff lives in a house with her.  Her description of plaintiff's typical day was substantially the same as the description offered by plaintiff.  She also agreed with plaintiff that he needs help with some dressing and bathing activities, but no help with money related matters.  Ms. Rios reported that plaintiff has difficulty with lifting, squatting, bending, standing, reaching, sitting, walking, kneeling, stair climbing, concentrating, and using his hands.  She also stated that plaintiff can only walk "about a block" before needing to rest for about 10 minutes.

November 5, 2007 – Agency examining doctor Philip Seu, M.D., performed a comprehensive internal medicine evaluation.  Dr. Seu obtained the following subjective history:

1.  JOINT PAIN: The claimant reported that he has a long history of construction work that he has been doing most of his life.  He reported that he has had the onset of joint pain for the last three years.  The joints mostly involved are his back and his elbows but he also has pain in his wrists and hands.  He reported that he has had increasing difficulty doing construction work, bending, squatting, and lifting.  He has had no problems with swelling in the joints.  He has seen physicians and has been prescribed pain medication and anti-inflammatory drugs.  He has had x-rays done and was told he had "arthritis."  He underwent a pain management program and has taken Vicodin and has tied going back to construction work but has been unable to do so.  Of note, he reported that he had right knee surgery secondary to trauma in 1992.

2.  LOW BACK PAIN: The claimant reported a 2-3 year history of low back pain.  The pain is across the lumbar region.  There is no radiation to his legs or upper back.  He had x-rays done as well as an MRI and was told he had "arthritis."  The pain is worse with bending or with prolonged sitting.  He has been treated with anti-inflammatory agents which have only provided partial relief.

/ / /

/ / /

As to activities of daily living, plaintiff reported the following:

> The claimant reported that he does light chores around the house such as washing his driveway or watering his plants. He reported he cannot do any heavy lifting. He has hired a gardener because he cannot do his yard work. He goes for short walks for exercise.

On physical examination, Dr. Seu diagnosed polyarthralgia secondary to degenerative joint disease, chronic low back pain, and hypertension. Dr. Seu provided the following functional assessment:

> The number of hours the claimant should be able to stand or walk in an eight-hour workday is without limitations.

> The number of hours the claimant should be able to sit in an eight-hour day is without limitations.

> Assistive device: The claimant does not require any assistive device for ambulation mobility.

> The amount of weight the claimant should be able to lift and carry is without limitations.

No postural, manipulative, visual, communicative, or environmental limitations were noted.

January 4, 2008 – Treatment notes provided by Dr. Garrett reveal that plaintiff was seen incident to his ongoing disability claim. On examination, there was some reproducible tenderness in the trapezius muscles bilaterally, as well as some bilateral diffuse tenderness in the shoulders. Shoulder abduction, flexion, and rotation were limited "due to discomfort." No tenderness could be reproduced in the wrists. Some knee tenderness was noted, but no swelling. Plaintiff's weight was 243 pounds.

February 19, 2008 – Agency consultative doctor Sharon P. Amon, M.D., completed a Physical Residual Functional Capacity Assessment. Dr. Amon opined that plaintiff could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. Plaintiff could sit/stand/walk six hours in an eight-hour day. Plaintiff's ability to push/pull was unlimited. Plaintiff could frequently climb stairs, balance, and stoop, and occasionally kneel, crouch, and crawl. The doctor opined that plaintiff should never climb ladders, ropes, or scaffolds. No other

limitations were noted.

February 24, 2009 – Plaintiff's treating physician – Dr. Garrett – submitted a source statement as follows:

> Patrick T. Mulvany is a 49 year old male and is a patient of mine since 2002. He has been having joint pain for several years, worse since 2007. Our rheumatologist feels he has a combination of fibromyalgia, degenerative joint disease/arthritis, and lateral epicondylitis. While he may not have a clean and tidy diagnosis for his pain syndrome, his history and physical as well as my knowledge of this patient do not make me feel that he had any malingering or secondary gain. I think honestly for lack of better terms he had worn out his joints from his years of hard labor using heavy equipment. This is a profession I feel he unfortunately is no longer suited for due to his limitations.

September 28, 2009 – Dr. Garrett submitted another source statement incident to plaintiff's appeal to the Appeals Council:

> Mr. Mulvany returns to me today having had his claim for disability benefits denied. The crux of the denial seems to be whether or not he can perform at even a sedentary exertional level. The judge in this case concluded he should be able to perform a full range of light work. This would entail, to the best of my understanding, the ability to stand and/or walk for 6 hours in an 8 hour day, sit with some pushing and pulling of hand or foot controls.
>
> Mr. Mulvany states he tried to perform a job at this level of activity in a period from 2005-2007 with inability to hold this job. At that time his employer placed him on light duty as an estimator/bidder. His job function was walking around work sites, ordering, desk work, traveling by automobile. There was no heavy lifting, climbing, or vigorous activity in this job, yet Mr. Mulvany was still unable to perform this job due to pain and stiffness. He missed almost every Friday as he was "worn down" by the end of the week, and he missed quite a few Tuesdays, as he was particularly effected on this day as well.
>
> Mr. Mulvany's primary concern is that he would not be able to hold a job performing "light duty" on a full time basis. As evidence, he explains to me his personal experience as above. He has many days where pain prohibits him from work. While he might be able to perform light duty on a less than full time basis, he would have difficulty holding a job full time because of his frequent days with pain.
>
> Please take this personal experience with attempts at a light duty job into consideration when reassessing his ability to perform such a job.

///

### III.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### IV.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ rejected the opinion of plaintiff's treating doctor without a legitimate basis for doing so; (2) the ALJ erred in rejecting plaintiff's testimony as not credible; (3) the ALJ did not provide legitimate reasons for rejecting lay witness evidence; and (4) the ALJ erred by applying the Medical-Vocational Guidelines in lieu of obtaining testimony from a vocational expert.

A.    **Treating Source Medical Opinion**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

1   conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

2   1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

3   see also Magallanes, 881 F.2d at 751.

4           Plaintiff argues that the ALJ erred by not stating legitimate reasons for favoring

5   the opinions of the agency doctors over those of his treating physician, Dr. Garrett.  The ALJ

6   discussed Dr. Garrett in detail as follows:

7           James B. Garrett, M.D., treated the claimant and provided records
            covering the period from February 2007 to January 2008 (Exhibits 6F, 8F).
8           These reflect the claimant's complaint of ongoing back, shoulder, knee,
            wrist, and feet pain.  Radiological studies revealed only minimal
9           degenerative changes of the right knee and no abnormality in the left knee,
            ankles, elbows, and wrists.  In January 2008, Dr. Garrett reported: some
10          reproducible bilateral trapezius tenderness; bilateral diffuse tenderness in
            the shoulders with limited abduction, flexion, and internal rotation; no
11          reproducible tenderness in the elbows or wrists; decreased grip strength
            bilaterally; and some tenderness of the knees with no swelling or limited
12          motion.  The claimant was assessed with multiple joint pain.  Dr. Garrett
            opined, in part, that the claimant was able to sit, stand, and/or walk for less
13          than 2 hours in an 8-hour workday and occasionally used a cane.  In
            February 2009, Dr. Garrett reported that the claimant had been having
14          joint pain for years and that a rheumatologist had felt that the claimant had
            a combination of fibromyalgia, degenerative disc disease, arthritis, and
15          lateral epocondylitis (Exhibit 13F/3).  Dr. Garrett acknowledged that the
            claimant did not have a "clean and tidy" diagnosis for his pain syndrome,
16          but opined that he had worn out his joints after years of heavy labor and
            was no longer suited for such work.
17
            The opinions of Dr. Garrett regarding the claimant's functional capacity
18          are not consistent with this own findings, i.e., his failure to identify any
            impairment which could be expected to cause such functional limitations,
19          nor the other medical evidence.  As noted, Dr. Seu determined after hands-
            on physical evaluation that the claimant had **no limitations** (bold in
20          original) in his ability to sit, stand, or walk and the state agency reviewing
            physician described a capacity for at least light work activity.  This latter
21          medical consultant has experience with and understanding of the Social
            Security Administration disability program and their evidentiary
22          requirements and, thus, is particularly qualified to make such assessments.
            See 20 C.F.R. 404.1527(d)(6).  His findings are found to be consistent
23          with the objective medical evidence of record except with regard to
            asserted postural limitations. . . .  To the extent Dr. Garrett intends to
24          convey a finding of disability under the [Social Security] Act, such
            opinions are reserved for the Commissioner. . . .\
25

26   / / /

1  The ALJ also criticized Dr. Garrett's opinion as being based on plaintiff's subjective complaints

2  instead of  his own objective findings.

3          The court finds no error in the ALJ's analysis of Dr. Garrett's records and

4  opinions.  Dr. Garrett's treatment notes consistently fail to document any disabling condition.

5  For example, in June 2006 Dr. Garrett noted no low back tenderness on examination.  The report

6  of low range of motion was based on subjective complaints only.  In February 2007 Dr. Garrett

7  conducted another examination which revealed a full range of motion in the shoulders and knees.

8  While plaintiff complained of pain in the lumbar spine, straight leg raising was negative.  Motor

9  strength and sensation were normal, and plaintiff was able to heel-to-toe walk.  In April 2007 Dr.

10  Garrett noted normal findings for the shoulders, knees, and elbows.  At that time, Dr. Garrett

11  could give no diagnosis more specific than unspecified joint pain.  In January 2008 Dr. Garrett

12  could reproduce no tenderness.  Any limitations noted at this visit were based on subjective

13  complaints only.  Given that Dr. Garrett never identified any significant abnormal findings on

14  objective examination, the ALJ was correct in concluding that Dr. Garrett's opinion that plaintiff

15  was totally disabled is not based on his own findings and that the opinion appears to be based

16  almost exclusively on plaintiff's subjective complaints.

17      **B.      Plaintiff's Credibility**

18          The Commissioner determines whether a disability applicant is credible, and the

19  court defers to the Commissioner's discretion if the Commissioner used the proper process and

20  provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

21  credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

22  F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

23  821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

24  and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

25  evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

26  credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

10

1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

   If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

   The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

/ / /

As to plaintiff's credibility, the ALJ stated:

> . . . [T]he claimant's allegations as tot he intensity, persistence, and limiting effect of [his] symptoms cannot be accepted to the extent they are inconsistent with the above residual functional capacity assessment [that claimant can perform the full range of light work]. This is not to suggest the claimant is less than an honest person; indeed, he presented at the hearing as a quite pleasant and generally credible individual who has genuine ostroarthritic discomfort. Nevertheless, there is nothing in the record which supports, much less is persuasive of, allegations of functionally incapacitating pain. As noted, Dr. Seu found no medical reason why the claimant should be limited in his ability to sit, stand, and/or walk, and the medical consultant employed by the state, after considering the opinions of Dr. Garrett, determined that the claimant was able to sit, stand, and/or walk for at least 6 hours in an 8-hour day. The claimant's and his girlfriend's own description of his admittedly quite limited activities would suggest a capacity greater than disability as defined in the Act and much greater than that suggested by Dr. Garrett who it appears based his unpersuasive opinions on the claimant's claims and not on independent medical findings.

Plaintiff argues that the ALJ's reasoning is "neither legitimate nor convincing."

Plaintiff appears to base his argument on Dr. Garrett's opinions as to plaintiff's functional limitations. Specifically, plaintiff argues that "[t]he ALJ's articulated reason for rejecting Mr. Mulvany's testimony was neither legitimate or convincing" because "Dr Garrett, Mr. Mulvany's treating physician, specifically noted that Mr. Mulvany's physical impairments were reasonably consistent with the symptoms and functional limitations described in his evaluation." As discussed above, the court finds that the ALJ committed no error in determining that Dr. Garrett's opinion was not entitled to any weight. Therefore, the ALJ's references to Dr. Garrett's unsupported opinion does not render the credibility analysis flawed. In sum, the court agrees with the ALJ that the appropriately credited evidence of record does not support plaintiff's claims of disabling pain.

/ / /

/ / /

/ / /

/ / /

1    **C.    Lay Witness Evidence**

2            In determining whether a claimant is disabled, an ALJ generally must consider lay

3    witness testimony concerning a claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915,

4    919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay

5    testimony as to a claimant's symptoms or how an impairment affects ability to work is competent

6    evidence . . . and therefore cannot be disregarded without comment."  See Nguyen v. Chater, 100

7    F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony

8    of lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at

9    919.

10           Regarding the lay witness statement from plaintiff's girlfriend, Ms. Rios, the ALJ

11   stated that Ms. Rios' description of plaintiff's activities "would suggest a capacity greater than

12   disability. . . ."  Plaintiff argues:

13                   The ALJ did not specifically reject Ms. Rios third party statements
                   but did opine that they suggested a capacity greater than that suggested by
14                 Dr. Garrett.  In fact, Ms. Rios' observations were consistent with Dr.
                   Garrett's assessed limitations.
15

16   Plaintiff also argues that the ALJ's "cursory treatment" of Ms. Rios' statements failed to satisfy

17   the requirement that reasons be provided for rejecting lay witness evidence that are germane to

18   each witness.

19           Again, the court finds no error with respect to the ALJ's consideration of Mr.

20   Rios' statements.  Clearly, the ALJ considered her statements and concluded correctly that they

21   do not describe a person who is totally disabled.  Specifically, as the ALJ noted, Ms. Rios (and

22   plaintiff) describe daily activities – such as driving alone, washing his driveway, watering the

23   lawn, shopping, cooking – that indicate some functional capacity greater than would be expected

24   from someone with disabling pain.  This reason is germane to Ms. Rios' statements and is

25   supported by the record.   Plaintiff's conclusory argument is unpersuasive.

26   ///

1

      **D.**    <u>**Medical-Vocational Guidelines**</u>

2             The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about

3 disability for various combinations of age, education, previous work experience, and residual

4 functional capacity.  The Grids allow the Commissioner to streamline the administrative process

5 and encourage uniform treatment of claims based on the number of jobs in the national economy

6 for any given category of residual functioning capacity.  See <u>Heckler v. Campbell</u>, 461 U.S. 458,

7 460-62 (1983) (discussing creation and purpose of the Grids).

8             The Commissioner may apply the Grids in lieu of taking the testimony of a

9 vocational expert only when the Grids accurately and completely describe the claimant's abilities

10 and limitations.  See <u>Jones v. Heckler</u>, 760 F.2d 993, 998 (9th Cir. 1985); <u>see</u> also <u>Heckler v.</u>

11 <u>Campbell</u>, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the

12 Grids if a claimant suffers from non-exertional limitations because the Grids are based on

13 exertional strength factors only.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b).

14 "If a claimant has an impairment that limits his or her ability to work without directly affecting

15 his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered

16 by the Grids." <u>Penny v. Sullivan</u>, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404,

17 Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids

18 even when a claimant has combined exertional and non-exertional limitations, if non-exertional

19 limitations do not impact the claimant's exertional capabilities.  See <u>Bates v. Sullivan</u>, 894 F.2d

20 1059, 1063 (9th Cir. 1990); <u>Polny v. Bowen</u>, 864 F.2d 661, 663-64 (9th Cir. 1988).

21             In applying the Grids, the ALJ stated:

22             Based on a residual functional capacity for the full range of light work and
consideration of the claimant's age, education, and work experience, a

23             finding of "not disabled" is directed to Medical-Vocational Rule 202. 21.
[¶] It is significant to note that even if the claimant were limited to purely

24             sedentary work, a finding of "not disabled" would be directed by Medical-
Vocational Rule 201.21.

25

26 ///

1   Plaintiff argues that this analysis is flawed because the ALJ's residual functional capacity

2   assessment was the result of the errors alleged above (i.e., improper rejection of Dr. Garrett's

3   opinion, improper rejection of plaintiff's and Ms. Rios' statements).  According to plaintiff, his

4   true residual functional capacity would include non-exertional limitations precluding application

5   of the Grids.

6          Plaintiff's argument concerning application of the Grids is derivative of his

7   arguments concerning the ALJ's consideration of Dr. Garrett's opinions and Ms. Rios'

8   statements.  For the reasons discussed above, the court finds no errors with respect to either Dr.

9   Garrett or Ms. Rios.  Therefore, the ALJ's treatment of neither provides a basis to challenge the

10  ALJ's Grids analysis.

11

12                          **V.  CONCLUSION**

13         Based on the foregoing, the court concludes that the Commissioner's final

14  decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

15  ORDERED that:

16         1.    Plaintiff's motion for summary judgment (Doc. 18) is denied;

17         2.    Defendant's cross-motion for summary judgment (Doc. 19) is granted; and

18         3.    The Clerk of the Court is directed to enter judgment and close this file.

19

20

21  DATED: April 7, 2011

22                          _____
                            **CRAIG M. KELLISON**
23                          UNITED STATES MAGISTRATE JUDGE

24

25

26

                                15